UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.   1:26-cr-031-JPH-MG |
| | ) | |
| MICHAEL MEENAN, | ) | |
| | ) | |
| Defendant. | ) | |

**FILED**

**02/06/2026**

**U.S. DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**Kristine L. Seufert, Clerk**

## INFORMATION

The United States Attorney charges that:

### General Allegations

At times material to this Information:

1.      Company A was a non-profit organization headquartered in Indianapolis, Indiana, which is located in the Southern District of Indiana.

2.      The Defendant, MICHAEL MEENAN ("MEENAN"), resided in Indianapolis, Indiana, which is located in the Southern District of Indiana.   From in or around 1999 to in or around 2021, MEENAN was the Director of Information Services for Company A.

3.      In his role as Director of Information Services, MEENAN was entrusted with the responsibility of purchasing Information Technology ("IT") equipment for Company A business purposes.

4.      MEENAN was issued an employee credit card, including a Mastercard issued by Fifth Third Bank ending in x9423.   Fifth Third Bank is headquartered in Cincinnati, Ohio and maintains its servers in Norwood, Ohio and Grand Rapids, Michigan.

5.      MEENAN was authorized to use his employee credit card to purchase IT-related equipment for Company A business purposes.   MEENAN was not authorized to use his employee credit card for personal purchases.

6.      Each month, MEENAN was provided with the monthly statement for his employee credit card.   MEENAN was required to review the monthly statement and submit receipts to Company A staff demonstrating each purchase he made using his employee credit card was for a legitimate Company A business purpose.   Company A used its funds to pay the credit card balance for purchases made using MEENAN's employee credit card.

**The Scheme to Defraud**

7.      Beginning on a date unknown but at least as early as in or about July 2007, and continuing until at least in or about September 2021, MEENAN devised and executed a scheme to defraud Company A and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts, as further described below (the "Scheme").   As part of the Scheme, MEENAN abused his position of trust as the Director of IT by purchasing personal items using his employee credit card. MEENAN represented to Company A that he had purchased IT-related equipment for Company A for business purposes when in fact he had purchased different items that were for his own personal use.

8.      It was part of the Scheme that MEENAN used his employee credit card, including the Fifth Third Bank Mastercard ending in x9423, to purchase items for personal use from online retailer Amazon.com using two personal Amazon accounts.   MEENAN also used his employee credit card, including the Fifth Third Bank Mastercard ending in x9423, to purchase items from Best Buy, a consumer electronics retailer.

9.      Among the items MEENAN purchased using his employee credit card were the following: DSLR cameras, camera lenses, Apple gift cards, Southwest.com gift cards, and cycling equipment.   MEENAN also used his employee credit card to purchase Amazon.com gift card balance reloads.   MEENAN then used the Amazon.com gift card balance reloads to purchase items for his own personal use, including photography and cycling equipment, not for Company A business purposes.   MEENAN made these purchases without the knowledge, consent, or authorization of Company A.

10.      To conceal that he had used his employee credit card to purchase items for his own personal use, MEENAN created falsified receipts that purported to show that the items he had purchased from Amazon.com were IT-related equipment for Company A business purposes. Then, to purportedly comply with office policy, MEENAN presented these falsified receipts to Company A's Accounts Payable department to justify the purchases as legitimate business expenses for Company A.

11.      Creating falsified receipts made it appear that MEENAN had made legitimate business purchases for Company A, when in fact he had purchased items for his own personal use using his employee credit card, which he was not authorized to do.   Therefore, by presenting falsified receipts to Company A's Accounts Payable department, MEENAN misrepresented, concealed, and hid, and caused to be misrepresented, concealed, and hidden, the existence of his personal purchases using Company A's funds.

**Interstate Wire Communications**

12.      MEENAN, having devised the Scheme described above, did, for the purpose of executing the Scheme and attempting to do so, cause numerous wire communications to be transmitted in interstate commerce.

13.     For example, as part of the Scheme, and to conceal MEENAN's theft of funds, on or about May 2, 2021, MEENAN used his employee credit card, a Fifth Third Mastercard ending in x9423, to purchase an Amazon.com gift card balance reload for $1,100.00, which caused an interstate wire communication to take place.   MEENAN made this purchase without the knowledge, consent, or authorization of Company A.   Then, to make it appear to Company A that this purchase was for Company A business purposes, MEENAN submitted to the Company A's Accounts Payable department a receipt he had falsified that purported to show the purchase was of two "APC Smart-UPS 1250VA Smart-UPS with SmartConnect."   A UPS, also known as an Uninterruptible Power Supply, is an IT-related piece of equipment.   The falsified receipt had the effect of making it appear as though MEENAN had purchased a UPS device for Company A business purposes.   In reality, however, MEENAN used the funds he illicitly reloaded onto the Amazon.com gift card to purchase items for his own personal use, including a Fujifilm camera lens.

14.     In total, as a result of the Scheme, MEENAN caused approximately 1,173 unauthorized transactions for his personal use and benefit to take place using his employee credit card, which were paid using Company A funds, totaling at least approximately $543,521.13.

### COUNT 1
### Wire Fraud
### 18 U.S.C. § 1343

15.     Paragraphs 1 to 14 are re-alleged and incorporated herein by reference.

16.     Beginning on a date unknown but at least as early as in or about July 2007, and continuing until at least in or about September 2021,

### MICHAEL MEENAN

Defendant herein, having devised a Scheme or artifice to defraud and for obtaining money by

4

means of false or fraudulent pretenses, representations, or promises, as described in Paragraphs 1 through 14 above, did, for the purpose of executing such Scheme described above and attempting to do so, cause to be transmitted by means of wire communication in interstate commerce the signals and sounds described below:

| On or About Date | Description of Wire Communication |
| --- | --- |
| May 2, 2021 | MEENAN used his employee credit card, a Fifth Third Mastercard ending in x9423, to purchase an Amazon.com gift card balance reload for $1,100.00, which caused an interstate wire communication to take place. |

All of which is a violation of Title 18, United States Code, Section 1343.

## **FOREITURE**

17.     The allegations contained in Count 1 of the Information are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

18.     Upon conviction of the offense in violation of Title 18, United States Code, Section 1343 set forth in Count 1 of this Information, the defendant, MICHAEL MEENAN, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.

19.     Further, upon conviction, the United States will seek an order of forfeiture in the form of a money judgment of $543,521.13, representing the amount of proceeds the defendant obtained from wire fraud as charged in Count 1.

20. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

THOMAS E. WHEELER II
UNITED STATES ATTORNEY

By: _____
Meredith Wood
Assistant United States Attorney

By: _____
Kyle Sawa
Chief, General Crimes Unit